*Isaac Nutovic, Esq.*                                    :
*NUTOVIC & ASSOCIATES*
*Counsel to Debtor*
*261 Madison Avenue, 26th Floor*
*New York, New York 10016*
*(212) 421-9100*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re:                                                    Chapter 11

          4218 PARTNERS LLC,                          Case No. 19-44444 (nhl)


                              Debtor.
--------------------------------------------------------------x

4218 PARTNERS LLC,

                        Plaintiff,

                                             Adv. Pro. No. 19-1115 (NHL)

       –against–

MAGUIRE FT. HAMILTON LLC,


                        Defendant.
-------------------------------------------------------------- X

### DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

      4218 Partners LLC (the "Debtor" or "Plaintiff"), by its attorneys, Nutovic & Associates,

submits this memorandum of law in opposition to the motion of Maguire Ft. Hamilton LLC

("Defendant" or "Maguire") which seeks judgment on the pleadings. Unless otherwise specified,

capitalized terms are as defined in the Complaint.

### Preliminary Statement

      In its Memorandum of Law ("Memorandum"), Maguire Ft. Hamilton LLC argues that the

Complaint does not adequately state a claim for economic duress or equitable subordination. As

will be demonstrated below Maguire's arguments are rebutted by the applicable case law

precedents. To the extent that the Court finds that the Complaint falls short in any regard, the Debtor requests that it be allowed to amend its Complaint.

Maguire makes five arguments packaged under three headings. It argues first that Maguire's predecessor in interest, (hereinafter also referred to as "Maguire", see Memorandum fn. 2) in refusing to honor its commitment to provide $9,000,000 in financing did not make a further demand and merely reduced the amount of financing available. That argument is obviously wrong. The Lender demanded that the Debtor agree to accept $8,250,000 as a new term in the contract. That change benefitted the Lender by providing it with a better loan to value ratio in the same way as an increase in price terms benefits a supplier.

Maguire's second argument in the first heading tries to "blame the victim". Maguire asserts that the duress was not the fault of the Lender but imposed by the time deadlines in the sales contract signed by the Debtor. A plethora of cases upholding economic duress claims all involve contracts signed by the party making the claim; contractual commitments are the norm and do not standing alone create duress. Here the duress was created when the Lender refused to honor its commitment leaving the Debtor without a practical remedy.

The third argument is that the reduction in loan amount benefitted the Debtor because it decreased the monthly loan repayment amount. However, when Maguire shorted the loan commitment of $9,000,000 by $750,000, the decrease in the monthly payments did nothing to ameliorate the substantial predicament in which the Debtor found itself.

The fourth argument is that the Debtor had alternatives to signing the Loan Documents: sue for damages or go into bankruptcy. Suing for damages is a legal right and if the availability of that right alone were sufficient to defeat an economic duress claim, that cause of action would never be available. The feasibility of recovering all the consequential damages coupled with the

immediate draconian losses which would ensue from failing to accede to the Lender's demands, are factual issues to be weighed in determining whether the Debtor was under such duress as to excuse its acceding to the Lender's demands. Moreover, the loss of a real estate contract is considered irreparable harm sufficient to warrant specific performance. Similarly, the option of filing a bankruptcy proceeding is a legal right, but the Court needs to weigh facts to determine whether that option (which at best would have pushed the deadline back 60 days) would have completely vitiated the duress or just exacerbated the inability to obtain financing.

The fifth argument--that the Debtor ratified the Loan Documents by not asserting the economic duress for eight months--is an affirmative defense which was not pleaded in Defendant's answer and is deemed waived. The allegations of the Complaint also do not support a finding of an intentional abandonment of the economic duress defense as a matter of law. The cases are clear that the mere passage of a fixed amount of time before the claim is legally asserted, is not dispositive. The Court is required to weigh other facts, such as the immediate non-payment of the Note and the negotiations to pay back the loan, which are pleaded in the Complaint.

## POINT I

### THE COMPLAINT PROPERLY PLEADS FACTS WHICH
### <u>STATE A CLAIM FOR ECONOMIC DURESS.</u>

A.  <u>**Standard of Review**</u>.

"On a motion to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the trial court's function is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. The issue is not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims. The district court should grant a Rule 12(b)(6) motion only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. A district court must accept plaintiff's well-pleaded factual allegations as true, and the allegations must be construed favorably to the plaintiff." KiSKA Const. Corp.US v. G & G Steel, Inc., 2005 WL 1225944, at *4 (S.D.N.Y., May 20, 2005) (internal citations omitted) (relying upon Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980); Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Papasan v. Allain, 478 U.S. 265, 283 (1986); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991)). "The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings. Thus, we will accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the counter-claimant. To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (internal citations omitted).

### B.  The Complaint Alleges That Defendant Subjected Plaintiff to a Wrongful Threat

At p.8 of the Memorandum, Maguire states that the law of economic duress requires an allegation that "one party to a contract has threatened to breach the agreement by withholding performance unless the other party agrees to some further demand." Paragraphs 16 and 17 of the Complaint allege that the Debtor had received a firm commitment from Maguire to fund $9,000,000 and that it unlawfully threatened to breach the binding Commitment unless a new demand was acceded to—reduction of the loan amount to $8,250,000. Maguire's argument

4

that this amounts only to a breach of contract claim flies in the face of the allegations. Maguire did not just threaten to breach; it said it would not breach if a further demand was met which improved the loan to value ratio of the loan.

      In the leading case on the law of duress in New York, <u>Austin Instrument, Inc. v. Loral Corp.</u>, 29 N.Y.2d 124 (1971) Loral was under contract to produce radar sets for the United States Navy. After soliciting subcontractor bids for the component parts, Loral notified Austin that it would be awarded some, but not all, of the subcontracts. Austin, which was at the time a supplier for another of Loral's government contracts, then demanded that it be awarded all of the new subcontracts, and further demanded that Loral pay a substantially higher price for all existing and pre-existing orders, or else it would refuse to deliver any further component parts under its existing contract with Loral Corp. The Court of Appeals held that these facts set forth "a classic case, as a matter of law, of… duress… It is manifest that Austin's threat -- to stop deliveries unless the prices were increased -- deprived Loral of its free will." <u>Austin Instrument, Inc. v. Loral Corp.</u>, 29 N.Y.2d 124, 132 (1971); <u>see</u> <u>also</u> <u>KiSKA Const. Corp.US v. G & G Steel, Inc.</u>, 2005 WL 1225944, at *5 (S.D.N.Y. May 20, 2005) (holding that the elements of an economic duress claim were sufficiently pleaded where the defendant threatened, in breach of its contract, to refuse to deliver components absent significant additional compensation); <u>Sosnoff v. Carter</u>, 165 A.D.2d 486 (1st Dept. 1991), upholding a claim for economic duress where the on the eve of closing, one of the parties to a joint venture agreement formed to develop certain valuable real property announced that he was withdrawing from the deal in breach of their contract unless modifications were made to the existing agreement to his benefit. <u>See</u> <u>also</u> <u>Gallagher Switchboard Corp. v. Heckler Elec. Co.</u>, 36 Misc. 2d 225, 226–27, 232 N.Y.S.2d 590 (Kings Co. Sup. Ct. 1962) (upholding a defense of economic duress upon allegations of a threat

to withhold delivery to the defendant in breach of a contract unless defendant agreed to a modification of the terms).

In the case at bar, the allegation is that Defendant issued an unambiguous threat, informing Plaintiff that it must accept a new term to the existing binding agreement or else Defendant would not fund the deal at all. Complaint at ¶17. Defendant's threat was wrongful in that it breached the parties' previously bargained-for contract. Complaint at ¶¶16-17, and Exhibit C to the Complaint.

Defendant cites numerous cases in support of its argument that Plaintiff has failed to allege a wrongful threat, but these cases are all distinguishable in that the courts found that the party had no obligation and therefore was within its rights to withhold performance. (Here Maguire has acknowledged an obligation to fund $9,000,000 for purposes of its Motion.) See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 143-44 (2d Cir. 2011) (the alleged threat involved a bank's refusal to extend a line of credit where it had no contractual obligation to do so); Adrian Family Partners I, L.P. v. Exxonmobil Corp., 23 Misc. 3d 1120(A) (Westchester Co. Sup. Ct. 2007), aff'd, appeal dismissed, 61 A.D.3d 901 (2009) ("Exxon Mobil was not legally required to proceed with the purchase of the Pad Site in light of the fact that no enforceable contract existed for that transaction."); Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 527 (S.D.N.Y. 2001) (in which plaintiff sought to evade a settlement agreement but failed to allege that it was subject to any threat during settlement negotiations: "Here, Nasik fails to allege the existence of any wrongful threat; it alleges only that its own difficult financial circumstances necessitated signing the agreements at issue."); Mazurkiewicz v. New York City Health & Hosps. Corp., 585 F. Supp. 2d 491, 500 (S.D.N.Y. 2008), aff'd, 356 Fed. Appx. 521 (2d Cir. 2009) (in which plaintiff did not plead a wrongful

threat, or indeed that defendant had taken any unlawful action which induced him to sign the agreement); Feyh v. Brandtjen & Kluge, Inc., 1 A.D.2d 1014 (2nd Dept. 1956), aff'd, 3 N.Y.2d 971 (1957) (finding that the party had the legal right to increase its prices under the governing contract); Pallonetti v. Liberty Mut., 2011 WL 519407, at *5 (S.D.N.Y. Feb. 11, 2011) (involving a severance agreement and release signed in settlement of a prior lawsuit, the court found that plaintiff failed to allege any unlawful threat); Davis & Assocs., Inc. v. Health Mgmt. Servs., Inc., 168 F. Supp. 2d 109, 115 (S.D.N.Y. 2001) (finding no duress for HMS refusing to advance further payments where there was no evidence that HMS was obligated to do so); Joseph v. Chase Manhattan Bank, N.A., 751 F. Supp. 31, 36 (E.D.N.Y. 1990) ("Joseph was not threatened by this offer; he was given a choice. He could stay on at his job at the status quo and pursue his claims in court or retire early with enhanced benefits.").

Defendant also suggests that a claim for economic duress would be inappropriate here because the time constraints at issue are the result of Plaintiff's contract with a third party. The refutation to this argument of causation is that in many of the cases in which a court has upheld a claim for economic duress, the party claiming duress was subject to a deadline in a third-party contract. See e.g. Austin Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124 (1971); KiSKA Const. Corp.US v. G & G Steel, Inc., 2005 WL 1225944 (S.D.N.Y. May 20, 2005); Sosnoff v. Carter, 165 A.D.2d 486 (1st Dept. 1991); and Gallagher Switchboard Corp. v. Heckler Elec. Co., 36 Misc. 2d 225, 226–27 (Kings Co. Sup. Ct. 1962). It was Maguire's unscrupulous decision to threaten to breach its contract one business day before it was obligated to provide $9,000,000 in financing, that created duress.

Defendant's assertion that its wrongful reduction in the loan amount inures to Plaintiff's benefit is baseless and disingenuous. Defendant knew at the time it signed its

financing commitment that Plaintiff required $9,000,000. Maguire's naked assertion in its, Memorandum that the change of terms benefitted the Debtor is in any event a question of fact.

Plaintiff has met its pleading obligation. See Complaint at ¶¶16-19. It has alleged a contractual obligation by Maguire to fund $9,000,000 and a threat to breach that obligation unless a new term was added to the contract.

### C.  <u>Plaintiff Had No Other Realistic Options Available</u>

Defendant argues that Plaintiff should have pursued a breach of contract action instead of signing the Loan Documents. Maguire is suggesting that the Debtor should have forfeited its right to acquire the Property and instead sued for damages. However, the law recognizes that specific performance is available to enforce contracts to purchase real property precisely because there is no adequate remedy at law. See e.g. <u>Petrello v. White</u>, No. 01-CV-3082 (DRH) (AKT), 2018 U.S. Dist. LEXIS 38512, at *27 (E.D.N.Y. Mar. 8, 2018) ("the courts of New York hold that, as a rule, the remedy of specific performance should be awarded in contract action involving real property on the premise that each parcel is unique. *See Da Silva v. Musso*, 53 N.Y.2d 543, 428 N.E.2d 382, 444 N.Y.S.2d 50 (1981); *EMF Gen. Constr. Corp. v. Brisbee*, 6 A.D. 3d 45, 52, 774 N.Y.S.2d 39 (1st Dept. 2004)". Thus, the loss of the Property would have caused irreparable harm which is recognized as creating economic duress. <u>See</u> <u>e.g.</u> <u>Davis & Assocs. v. Health Mgmt. Servs.</u>, 168 F.Supp.2d 109, 116 (S.D.N.Y. 2001). Furthermore, there is no certainty that all of the losses suffered would have been recoverable. Consequential damages are recoverable only in "limited circumstances". <u>Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York</u>, 10 N.Y.3d 187, 192–93 (2008).

The cases cited by Defendant are inapposite here, where Plaintiff would have suffered irreparable harm and its extensive consequential damages could not be adequately

redressed in a breach of contract action. Defendant cites <u>Jonassen v. Bankers Tr. Co.</u>, 1990 WL 180150, at *2 (S.D.N.Y. Nov. 13, 1990), for the premise that plaintiffs had an adequate remedy available through litigation. That case is distinguishable in that it involved a plaintiff who was injured as a result of the wrongful institution of a securities fraud action. The court found that the plaintiff erred in asserting a claim for economic duress at all, because the allegations there most closely constituted a claim for malicious prosecution, through which the courts could have adequately redressed the injuries. <u>See</u> <u>also</u> <u>Joseph v. Chase Manhattan Bank, N.A.</u>, 751 F. Supp. 31, 35 (E.D.N.Y. 1990) (cited by Defendant, finding that the facts alleged could constitute a claim for constructive discharge which could be adequately redressed through the courts).

Defendant further relies on two cases to argue that a bankruptcy proceeding was an adequate alternative to capitulating to a wrongful demand. However, in both those cases the court held that there was no wrongful conduct.   <u>In re Marketxt Holdings Corp.</u>, 361 B.R. 369, 382 (Bankr. S.D.N.Y. 2007)(finding insufficient wrongful conduct alleged at p. 401), and <u>Interpharm, Inc. v. Wells Fargo Bank, N.A.</u>, No. 08CIV.11365RJH, 2010 WL 1257300, (S.D.N.Y. Mar. 31, 2010)(also finding insufficient wrongful conduct alleged at p. 27), <u>aff'd sub nom. Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n</u>, 655 F.3d 136 (2d Cir. 2011), arguably<u>, in dicta</u>, suggested that on the facts before them bankruptcy was a feasible alternative for the party asserting economic duress. These cases do not stand for the proposition that bankruptcy is always an alternative.  The transactions which were the subject of the claims for duress in those cases involved already insolvent companies which were entering into agreements to avoid bankruptcy in the first place. Here, bankruptcy would not have solved the Debtor's problem. At best it would have delayed it by 60 days and, likely, created greater difficulty for the Debtor in

qualifying for financing. This is a question of fact; the Debtor is not required at the pleading stage to negate all possible remedial strategies.

Notably, <u>Interpharm</u> expressly distinguishes itself from cases where a party is put at risk of being defaulted by a third party as here.

> "That Interpharm had alternatives at hand makes this case importantly different from those cited in its brief where economic duress was found. *See KiSKA Const. Corp.-USA v. G & G Steel, Inc.,* No. 04–9252, 2005 WL 1225944 (S.D.N.Y. May 20, 2005); *Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 324 N.Y.S.2d 22, 272 N.E.2d 533 (N.Y.1971); *Gallagher Switchboard Corp. v. Heckler Elec. Co.,* 34 Misc.2d 256, 229 N.Y.S.2d 623 (N.Y. Sup.Ct. Kings Co.1962). In each of those cases, after the parties entered into a contract for the sale of goods, the seller allegedly threatened to refuse delivery in order to procure a release or more favorable contract terms. *See KiSKA,* 2005 WL 1225944, at *2–*3; *Austin,* 29 N.Y.2d at 129, 324 N.Y.S.2d 22, 272 N.E.2d 533; *Gallagher,* 229 N.Y.S.2d at 627. In each, a central allegation was that the buyer was put at risk of being held in default by a third party as a result of the seller's threatened breach. *See KiSKA,* 2005 WL 1225944, at *2; *Austin,* 29 N.Y.2d at 131, 324 N.Y.S.2d 22, 272 N.E.2d 533; *Gallagher,* 229 N.Y.S.2d at 629–30.

<u>Interpharm, Inc. v. Wells Fargo Bank, N.A.</u>, 2010 WL 1257300, at *11–12 (S.D.N.Y. Mar. 31, 2010), <u>aff'd sub nom.</u> <u>Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n</u>, 655 F.3d 136 (2d Cir. 2011).

The case at bar, like <u>Austin</u>, involves a party which threatened to refuse performance under a contract in order to procure more favorable contract terms for itself. As in <u>Austin</u>, Plaintiff was put at risk of being held in default by a third party as a result of the Defendant's threatened breach. As in <u>Austin</u>, Plaintiff could not have secured funding from any other source in time to meet its third-party obligations. Following the logic of <u>Austin</u> and the analysis set forth in <u>Interpharm</u>, these facts constitute another "classic case" of duress, because accepting Defendant's breach and suing for damages would not have been an adequate remedy—Plaintiff would still have had to obtain the funding elsewhere within the time parameters of its contract of sale.

**D.  Plaintiff Did Not Ratify The Loan Documents Or
     Forfeit Its Right To Seek Relief For Economic Duress**

Ratification was not pleaded by Maguire in its answer. Ratification is an affirmative defense which must be raised in a responsive pleading or it will be deemed waived. See e.g. Chainey v. Street, 523 F.3d 200, 209 (3d Cir. 2008).

The criteria for application of affirmative defenses such as waiver and ratification are stringent. Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-CV-04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 120131, at *53 (S.D.N.Y. Aug. 31, 2016). In order to establish the defense, there must be deliberate, informed abandonment of known rights. LNC Invs. v. First Fid. Bank, N.A., 173 F.3d 454, 463 (2d Cir. 1999). It is Maguire's burden to establish the facts supporting the defense.

Defendant's argument that this Court can find a deliberate informed abandonment of known rights from the allegations of the Complaint does not comport with controlling case law. In Austin Instrument, Inc. v. Loral Corp., 29 N.Y.2d 124 (1971), Loral did not file an action alleging duress until fourteen months after signing the contract in question. Thus, a space of eight months before the defense was articulated in a legal pleading is not sufficient to support dismissal. Moreover, in Sosnoff v. Carter, 165 A.D.2d 486 (1st Dept. 1991), defendant made a number of payments on a note defendant was coerced to sign. From the posture of the case it appears defendant only raised the defense of economic duress after suit was filed. The court in Sosnoff noted that the defendant had made repeated protests which were inconsistent with any act of ratification and were some evidence of defendants' preservation of a claim of economic duress. Id. 491-492.

In the case at bar, Plaintiff has alleged that it "immediately repudiated the Loan Documents and did not pay the January 1, 2019 payment." Complaint at ¶21.  The Debtor

11

offered to pay contract interest and give all funds back, but the offer was refused. Complaint at ¶23. Under the circumstances, Plaintiff has alleged facts which are sufficient to controvert any implication that it made a deliberate decision to ratify the Loan Documents. As a result of Defendant's wrongful conduct, Plaintiff remains in a state of economic duress.

For the foregoing reasons, it is respectfully submitted that the Complaint properly pleads facts which state a claim for economic duress, and that Defendant's motion should therefore be denied.

## POINT II

### DEFENDANT HAS FAILED TO ARTICULATE ANY BASIS TO DISMISS THE EQUITABLE SUBORDINATION CLAIM

Without any case support, Maguire blithely asserts: "Since the allegations purportedly supporting the cause of action for economic duress are insufficient as a matter of law, they cannot be recycled into a viable claim for equitable insubordination.". This *ipse dixit* claim is wholly insufficient. The Second Circuit has made it clear that a bankruptcy court may subordinate a particular claim if it finds that the creditor's claims, while not lacking a lawful basis, nonetheless results from inequitable behavior on the part of that creditor. Musso v. Ostashko, 468 F.3d 99, 109 (2d Cir. 2006). In re Enron Corp., 379 B.R. 425, 432-33 (S.D.N.Y. 2007). *See, also,* In re LightSquared Inc., 511 B.R. 253, 346 (Bankr. S.D.N.Y. 2014) (equitable subordination available notwithstanding the apparent legal validity of a particular claim.) Thus Maguire could defeat the debtor's claim of economic duress thereby upholding the validity of its claim and still be equitably subordinated.

Maguire cites no cases that suggest subordination is not available under 11 U.S.C. §510 (c) unless the inequity in a creditor's conduct rises to the level that would qualify for a vitiation

of a signed contract on principles of economic duress. Indeed, the remedies available for these claims – the remedy available for the equitable subordination is far less impactful -- suggest that the bar for equitable subordination is much lower. For the economic duress claim, the action taken while under duress is completely negated and rights are eliminated; under equitable subordination law that does not happen. Rights are only subordinated -- not eliminated entirely. As that applies to the Complaint, the relief requested on the economic duress claim is that Maguire should not be able  to take any action or make a claim under the Loan Documents; the relief requested on the equitable subordination claim is only subordination of Maguire's claim to creditors.

Case law does not prescribe only one type of inequitable conduct as a pre-requisite for maintaining an action for equitable subordination. Maguire's argument that equitable subordination relief could not be granted on facts which do not justify the economic duress remedies is illogical. The branch of the Motion which seeks judgment dismissing the Debtor's equitable subordination claim should be denied.

## POINT III

### THE MOTION TO STAY DISCOVERY SHOULD BE DENIED

For the reasons set forth in the accompanying declaration of Isaac Nutovic, Maguire's motion to stay discovery should be denied.

[Deliberately Blank]

<u>Conclusion</u>

For all of the reasons set forth above the Debtor requests that Maguire's motions for (i) judgment on the pleadings and (ii) to stay discovery, should be denied. In the event the Court decides the allegations in the Complaint are deficient, the Debtor requests leave to re-plead.

Dated: New York, New York
      February 20, 2020

                    NUTOVIC & ASSOCIATES,
                    Attorneys for 4218 Partners LLC

                    By:  s/*Isaac Nutovic*
                        Isaac Nutovic, Esq.
                    261 Madison Ave, 26th Floor
                    New York, New York 10016
                    Tel: (212) 421-9100