UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:                                                          Chapter 11

4218 PARTNERS LLC

                                              Case No. 19-44444 (NHL)

                  Debtor.
----------------------------------------------------------------X
4218 PARTNERS LLC,

                  Plaintiff,                            Adv. Pro. No. 19-01115 (NHL)


-against-

MAGUIRE FT. HAMILTON LLC,

                  Defendant.

----------------------------------------------------------------X

## BENCH MEMORANDUM

### Introduction

Plaintiff 4218 Partners LLC, a chapter 11 debtor, commenced an adversary proceeding (Adv. Pro. No. 19-01115) against Maguire Ft. Hamilton LLC ("Maguire" or the "Defendant"), alleging against Maguire claims of (i) economic duress and (ii) equitable subordination. The Defendant filed a motion for judgment on the pleadings (the "Motion for Judgment") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"), seeking to dismiss the Complaint for failure to state a claim. The Court heard arguments on the Motion for Judgment on June 15, 2020 (the "June 15 Hearing").

For the reasons to be discussed, the Plaintiff has failed to state a claim for economic duress, and therefore the Motion for Judgment is granted in that respect. The Plaintiff has also failed to state a claim with respect to equitable subordination, but the Court will dismiss that cause of action

1

*without prejudice* and the Plaintiff may amend its Complaint to include facts, if available, that creditors were injured by the alleged inequitable conduct.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by Order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52, as made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

## Facts

This Complaint arises from a loan transaction between the Plaintiff and the Defendant's predecessor-in-interest, which concerns property located at 4218 Fort Hamilton Parkway, Brooklyn, New York (the "Property").[1] The Plaintiff is currently owned and controlled by Joseph Fischman through a holding company, 175 Pulaski R.L.M. LLC ("175 Pulaski"), who is also a debtor in this Court.

### I.     The Sales Contract

On December 12, 2017, 6323 14th Holdings LLC (the "Seller") and 4218 Fort Hamilton LLC (the "Original Purchaser") allegedly entered into a contract whereby the Original Purchaser agreed to purchase the Property for a purchase price of $8,000,000 (the "Sales Contract"). *See* Compl. ¶ 12. The closing was to be held on April 16, 2018 and the Sales Contract included a "time of the essence" provision. *Id.* At this time, Fischman owned a 100% membership interest in the Original Purchaser. *Id.* ¶ 13.

---

[1] The Court takes judicial notice of the state court filings, decisions, and orders.

Thereafter, the Sales Contract was amended seven times. *Id.* ¶ 14. The seventh amendment, dated October 5, 2018, (i) extended the closing date to November 19, 2018 (the "Closing Date"), (ii) increased the purchase price to $8,578,000, and (iii) substituted the Plaintiff, owned and controlled by Samuel Pfeiffer and Dina Krausz, as the purchaser.[2] *Id.*, Ex. B. Pfeiffer also owned and controlled land adjacent to the Property, namely 4202 Fort Hamilton Parkway, Brooklyn, New York. *Id.* ¶ 13; *see* 6/15/20 Tr. 104:9-14.

To induce the Seller to enter into the seventh amendment, the Plaintiff allegedly agreed to acquire certain air rights owned by Fischman in a third adjacent property (the "Air Rights"). Compl. ¶ 14; 6/15/20 Tr. 107:4-10. If the Sales Contract was consummated, the Air Rights would revert to the Plaintiff; however, the Air Rights would be forfeited to the Seller if the Plaintiff defaulted in closing the sale. Compl. ¶ 14.

The Plaintiff agreed to pay Fischman a total of $2,000,000 in consideration for the assignment of the Sales Contract and for transferring the Air Rights. *Id.* ¶ 15. Pfeiffer, who at this point controlled the Plaintiff, the Air Rights, and the adjacent property, intended to create a large development. *See id.* ¶ 13.

The Plaintiff asserts that it stood to lose about $3,250,000 if the Sales Contract did not close, which accounts for (i) the deposit already paid in the amount of $1,250,000, and (ii) $2,000,000 on account of the transfer of the Sales Contract and Air Rights. *Id.* ¶ 15.

### II.    The Financing

The Plaintiff alleges that it received various proposals from lenders seeking to finance the sale transaction, including a firm commitment letter from Ice Lender XVII LLC ("ICE"), dated November 8, 2018, for a principal loan amount of $9,000,000. *Id.* ¶ 16, Ex. C. However, on

---

[2] Pfeiffer held 75% of the Membership Interests, and Krausz held 25% of the Membership Interests. *See* Membership Interest Pledge Agreement (attached to Maguire Proof of Claim 4-2, Ex. C).

November 16, 2018—one business day prior to the closing date of the sale—ICE allegedly "unlawfully threatened to breach the binding Commitment unless the loan amount was reduced to $8,250,000." *Id.* ¶ 17.

On November 19, 2018, a promissory note in the amount of $8,250,000 secured by a mortgage on the Property, and certain guarantees, were executed in favor of ICE. *See* Maguire Proof of Claim 4-2, Ex. A. The note provided for an 18-month loan with nine monthly interest payments of $82,500 commencing on January 1, 2019, and the second set of nine monthly interest payments, approximately $742,500, to be escrowed from the financing proceeds. Compl. ¶ 20; *see* 6/15/20 Tr. 135:10-17. Further, ICE required each of the members of the Plaintiff—Pfeiffer and Krausz—to execute a guaranty and pledge agreement for their combined 100% membership interest (the "Membership Interests") in the Plaintiff (the "Pledge Agreement" and, together with the mortgage, the promissory note and the guaranty, the "Loan Documents"). *See* Motion to Disqualify ¶ 10, Case No. 19-44444, ECF No. 61. The Plaintiff alleges that it "had no choice and under extreme economic duress executed the [l]oan [d]ocuments for $8,250,000." Compl. ¶ 19. The Plaintiff asserts that a default was essentially guaranteed because, taking into account the $742,500 that was escrowed, the proceeds of the loan no longer covered the first nine months of interest payments due to the lender. *See* 6/15/20 Tr. 136:7-12 Compl. ¶ 20.

The Plaintiff further alleges that it "immediately repudiated" the Loan Documents and did not make the January 1, 2019 payment. Compl. ¶ 21. The Plaintiff alleges that a broker made the January 1, 2019 payment because ICE insisted that this payment be made before further negotiations could be had with the Plaintiff. *Id.* No further payments were made under the note, and ICE sent letters of default for missed payments in February 2019 and March 2019. *See d.* ¶ 22.

On March 7, 2019, the Loan Documents were assigned to the Defendant, who continued to enforce the alleged default. *See* Maguire Proof of Claim 4-2, Ex. E. On April 30, 2019, the Defendant sent a Notification of Disposition of Collateral to the Plaintiff and Pfeiffer, scheduling a sale of the Membership Interests for July 22, 2019. *See* Motion to Disqualify ¶ 12, ECF No. 61.

On June 26, 2019, Pfeiffer and Krausz transferred the Membership Interests to 175 Pulaski, an entity controlled by Fischman. *See id.* ¶ 15.

On July 19, 2019, the Plaintiff and 175 Pulaski filed a verified complaint and an Article 75 Petition against the Defendant in the Supreme Court of New York, Kings Co., Index No. 515910/19 (the "State Court Action") seeking to restrain the sale of the Membership Interests. *See* Adv. Pro. No. 19-0115, ECF No. 14, Ex. D. On July 19, 2019, the State Court denied this request. *See id.*, Ex. G.

On July 21, 2019, the Plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. *See* Voluntary Petition, Case No. 19-44444-nhl, ECF No. 1.

## Discussion

### I.     Rule 12(c) Standard

Rule 12(c), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, provides that a party may move for a judgment on the pleadings "[a]fter the pleadings are closed–but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard for dismissing a motion under Rule 12(c) is the same as the standard under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

Under Rule 12(b)(6), a plaintiff must plead sufficient facts that, when "accepted as true, [] state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). A

5

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint must allege enough facts to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). For purposes of reviewing a motion to dismiss for failure to state a claim, the Court accepts factual allegations in a complaint as true and draws all reasonable inferences in favor of the non-movant. *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007).

**II.      Economic Duress**

Under New York law, a plaintiff who seeks to void a contract under the theory of economic duress must prove "(1) a threat, (2) which was unlawfully made, [that] (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989); *see Mazurkiewicz v. New York City Health and Hosps. Corp.*, No. 09–0064–cv., 2009 WL 4825381, at *2 (2d Cir. Dec. 16, 2009). The doctrine of economic duress arises from the theory that "the courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (internal quotations omitted). This relief is "reserved for extreme and extraordinary cases," *id.* at 123, and as such, a "party seeking to avoid a contract because of economic duress shoulders a heavy burden." *Nasik Breeding & Research Farm Ltd. v. Merck & Co.,* 165 F.Supp.2d 514, 527 (S.D.N.Y. 2001) (internal quotations omitted).

i.    ***Unlawful Threat***

In order to prove that there has been an unlawful threat, a plaintiff must show that the defendant made "a threat to withhold performance that one is contractually obligated to provide in order to compel the other party to ***submit to new demands***." *See Interpharm, Inc. v. Wells Fargo Bank, Nat.'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (emphasis added). Thus, a threat to breach a contract, without some further demand, does not constitute an unlawful threat. *See Austin Instr., Inc. v. Loral Corp.*, 29 N.Y.2d 124, 130 (1971).

Here, the parties disagree as to whether the Plaintiff has stated a plausible claim that an unlawful threat was made. The Plaintiff alleges that the threat to reduce the principal amount of the loan from $9,000,000 to $8,250,000 was a further demand. Pl.'s Reply at 4-5, Adv. Pro. No. 19-01115-nhl, ECF No. 12. The Defendant disagrees, asserting that this alleged threat constitutes, at most, a breach of the commitment rather than a further demand. Def.'s Motion at 7-9, Adv. Pro. No. 19-01115-nhl, ECF No. 9. The Defendant argues that it did not make an additional request, such as demanding more collateral or guarantors. Def.'s Reply at 7, Adv. Pro. No. 19-01115-nhl, ECF No. 16.

This Court believes that the Plaintiff has not alleged sufficient facts that the Defendant's actions constitute a "further demand." *See Austin Instr.,* 29 N.Y.2d at 130. That is, under the *Twombly* standard, the Plaintiff has not met its burden that the Defendant's alleged threat to reduce the principal amount of the loan by $750,000 was more than a threat to breach the contract.

The Plaintiff's reliance on *Austin Instrument* to reach a contrary conclusion is misguided. In *Austin Instrument*, Loral Corporation ("Loral") was awarded a contract for the production of 40 radar sets for the Navy. 29 N.Y.2d at 128-29. Loral, in turn, entered into a subcontract with Austin Instrument ("Austin"), whereby Austin would supply 23 of the 40 parts. *Id*. Before the first contract

7

was completed, Loral was awarded a second Navy contract for the production of 40 additional radar sets. *Id*. Although Austin sought to be the sole supplier under the second Navy contract, Loral informed Austin that it would only be awarded a subcontract to supply the parts for which it was the lowest bidder. *See id*. Austin, in a seemingly retaliatory step:

> ***told Loral that Austin would cease deliveries of the parts*** due under the existing subcontract unless Loral ***consented to substantial increases in the prices provided for by that agreement*** – both retroactively for parts already delivered and prospectively on those not yet shipped – ***and placed with Austin the order for all 40 parts needed under Loral's second Navy contract***. Shortly thereafter, Austin did, indeed, stop delivery.

*Id.* at 129 (emphasis added).

Thus, the further demand was not only the demand that the prices be increased under the first contract, but also the demand that Austin be the sole supplier under the second Navy contract. *See id*.

Here, assuming all facts as true, the Defendant had a contractual obligation to provide a $9,000,000 loan, similar to how the vendor in *Austin* had a contractual obligation to deliver goods. *See id.* The threat to cease delivery of goods in *Austin* could be likened to the alleged threat to not provide the $9,000,000 loan. However, the critical difference is that the alleged threat by the Defendant to reduce the loan is not an "additional" demand as contemplated by the *Austin* court. Austin's threat was contingent on Loral taking new and further actions—accepting price increases *and* awarding Austin the role of supplying all the parts under the second Navy contract—thus reaching beyond a mere breach of contract claim. *See id.* at 128-29.

The Plaintiff's reliance on *KiSKA Construction* is also misplaced. *KiSKA Constr. Corp. US v. G & G Steel, Inc.*, No. 04CIV9252CSH, 2005 WL 1225944 (S.D.N.Y. May 20, 2005). There, a court found that an economic duress claim was feasible where the plaintiff argued that it was coerced into a settlement agreement with respect to claims that arose *outside of its original contract*

8

with a supplier. *Id*. at *2. In particular, the supplier threatened to suspend delivery of parts it was obligated to deliver under the original contract unless a settlement of the "extra" claims was reached. *Id*. As such, the threat to suspend delivery was a "further demand" in relation to coercing settlement of the supplemental claims. *See id*. at *2, *4.  Here, while the Defendant allegedly attempted to alter the terms of the loan commitment, the Defendant did not seek *additional* demands discrete from the original contract such that this Court could plausibly find that the circumstances warrant the "extreme and extraordinary" relief of economic duress.

As such, the Plaintiff has not met the plausibility standard with respect to there being an "unlawful threat." Accordingly, the economic duress claim must be dismissed under the Rule 12(b)(6) standard.

### ii. *Adequate Alternatives*

Even if the Defendant had made an unlawful threat, the claim would still fail because the Plaintiff has not sufficiently alleged that it was deprived of free will.

In addition to an unlawful threat, an economic duress claim also requires a showing that the Plaintiff was deprived of free will. *Austin Instr.,* 29 N.Y.2d at 130. The absence of free will does not mean that the harmed party had "no choice whatsoever, but at minimum the party must have . . . [had] ***no adequate alternative legal remedy***." *Grand Income Tax, Inc. v. HSBC Taxpayer Fin. Servs.,* No. 08–CV–346 (CBA), 2008 WL 5113646, at *5 (E.D.N.Y. Nov. 25, 2008) (emphasis added). As such, the Plaintiff must show that "the usual remedy of an action for rescission or for breach of contract would be inadequate to remedy the situation." *In re Marketxt Holdings Corp*., 361 B.R. 369, 401 (Bankr. S.D.N.Y. 2007); *Davis & Assocs., Inc. v. Health Mgmt. Servs, Inc*. 168 F.Supp.2d 109, 116 (S.D.N.Y. 2001). Accordingly, "[t]he standard is a practical one under which account must be taken of the exigencies in which the victim finds himself, and

the mere availability of a legal remedy is not controlling if it will not afford effective relief to one in the victim's circumstances." Restatement Second, Contracts § 175, comment b.

Here, the Defendant argues that the Plaintiff's claim fails as a matter of law because there were adequate alternative remedies, such as pursuing a breach of contract claim. Def.'s Motion at 12-13, Adv. Pro. No. 19-01115-nhl, ECF No. 9. The Plaintiff asserts that a breach of contract claim would have been inadequate because the law recognizes that specific performance is available for contracts to purchase real property, and that it "is no certainty that all of the losses suffered would have been recoverable." Pl.'s Reply at 8-9, Adv. Pro. No. 19-01115-nhl, ECF No. 12.

As an initial matter, at the June 15 Hearing, the Plaintiff argued that many of the facts with respect to this element of the analysis is a question of degree, and that a trial would be necessary for the Court to fully ascertain how the alleged threat deprived the Plaintiff of its free will. 6/15/20 Tr. 145:19-25. However, the Plaintiff misunderstands the standard before the Court. At issue is not whether facts are disputed and the degree of the allegations—as is the case in a summary judgment motion—but rather, ***accepting all facts as true*** whether the Plaintiff has stated a claim for relief. *See Iqbal*, 556 U.S. at 678. As demonstrated herein, under the Rule 12(b)(6) standard, the Plaintiff has not provided enough facts to support its position that there were no adequate alternative remedies. *See id.*

For example, the Plaintiff has not provided sufficient evidence that a breach of contract claim would have been insufficient. With respect to the Plaintiff's specific performance argument, the Defendant is not a seller of real estate, but a financial lender. The law is clear that it is very rare for a court to award specific performance in the context of a loan commitment. *See Towers Charter & Marine Corp. v. Cadillac Ins. Co*., 894 F.2d 516, 523 (2d Cir. 1990). While there are instances where specific performance may be appropriate in the context of lending, such as "when

the unavailability of alternative financing would leave the plaintiff with injuries that are difficult to value," the Court finds that the Plaintiff has not pled sufficient facts to evidence that it's damages would fit within this description. *See Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 211 (2002) (internal citations omitted).

Moreover, the Court is not persuaded by the Plaintiff's argument that a breach of contract claim would have been inadequate because there was no ***certainty*** the losses would have been recovered. The test at hand is not whether the Plaintiff would have fully recovered its alleged damages, but whether the legal remedy was available and adequate. *See Grand Income Tax,* 2008 WL 5113646, at *5. Of course, the Plaintiff's ability to recover damages would hinge on whether it's breach of contract claim ultimately had merit and the Plaintiff was successful in litigation, but that is a distinct issue from whether there was an adequate, available legal remedy. *Jonassen v. Bankers Tr. Co.*, No. 90 Civ. 2242 (LBS), 1990 WL 180150, at *3-4 (S.D.N.Y. Nov. 13, 1990) (finding a legal remedy adequate such that there was no economic duress, because if the plaintiff's claim was meritorious, it would be entitled to recover payments). Accordingly, the Plaintiff has not sufficiently alleged why a breach of contract claim would have been inadequate.

In addition, the Court finds that the facts do not plausibly support a lack of voluntariness such that the Plaintiff was coerced to sign the Loan Documents. For example, the Plaintiff does not allege that it was precluded from further amending the Sales Contract and Closing Date, despite the fact the Sales Contract had been amended ***seven times*** over the course of the preceding eleven months, including an amendment on October 5, 2018 that delayed the "time of the essence" closing to November 19, 2018. *See* Compl. ¶ 14. In other words, although the Plaintiff emphasized that the "time of the essence" closing was a major factor in pressuring the Plaintiff to accept the reduced

11

loan, the fact that the Sales Contract was amended on seven prior occasions weakens the argument that the Plaintiff was deprived of free will. *See id*.

Furthermore, while the Court understands that the alleged threat was only one business day prior to the sale's closing and that finding other sources of financing was highly unlikely, the Plaintiff does not allege any attempts to obtain additional financing. *Austin Instrument* makes clear that "***the law require[d]***" some attempt by Loral to search for other potential suppliers. *See* 29 N.Y.2d at 133. Thus, the Plaintiff was required to make some attempt to secure additional financing in order for the Court to find that there was no free will. *See id.*

Last, the Court notes that the numbers do not support a finding that the Plaintiff was deprived of free will. The purchase price of the Property was $8,578,000, but $1,250,000 had already been paid as a deposit leaving $7,328,000 due on the Closing Date. *See* Compl. ¶¶ 14, 15, Ex. B. The loan from the Defendant was $8,250,000, but $742,500 was to be escrowed. Accordingly, based on the facts brought before the Court, the Plaintiff should have received **$7,507,500** upon execution of the Loan Documents. As such, this amount was still sufficient to cover the amounts due under the Sales Contract, with $179,500 as a surplus ($7,507,500 - $7,328,000 = $179,500). Once the time pressure of the Closing Date had passed, the Plaintiff was free to attempt to secure additional financing to cover the first nine months of interest payments. In particular, the Plaintiff had over *six weeks* until the first interest payment of $82,500 was due. *See* Compl. ¶ 20. Thus, it is unclear to the Court how the reduction had any real negative impact associated with the time constraints of the Closing Date, thus weakening the argument that the Plaintiff lacked free will when consummating the Loan Documents.

iii.     *Ratification*

Moreover, even if the Plaintiff had sufficiently pled a claim of economic duress, the cause of action would not pass the pleadings stage because the Plaintiff has not adequately pled that it did not ratify the Loan Documents.

Even if a party has sufficiently pled a claim of economic duress, "[a] failure to promptly repudiate a contract entered into under duress will be deemed a ratification of that contract." *In re Marketxt Holdings Corp.*, 361 B.R. at 402. Ratification is an affirmative defense, which may occur through "'intentionally accepting benefits under the contract,' by 'remaining silent or acquiescing in the contract for a period of time after [a party] has the opportunity to avoid it,' or by 'acting upon it, performing under it, or affirmatively acknowledging it.'" *VKK Corp.*, 244 F.3d at 123 (quoting *In re Boston Shipyard Corp.*, 886 F.2d 451, 455 (1st Cir.1989)). If, however, a party is subject to "continu[ous] duress," it need not repudiate the contract until the duress has ceased. *Sosnoff v. Carter*, 165 A.D.2d 486, 492 (N.Y. App. Div. 1991).

The Defendant argues that the Plaintiff has waived or forfeited its right to the economic duress claim because the Plaintiff did not immediately repudiate the Loan Documents. Def.'s Motion at 15, Adv. Pro. No. 19-01115-nhl, ECF No. 9. The Defendant highlights the fact that the Plaintiff did not commence the State Court Action until July 2019, eight months after the alleged duress, retaining usage and benefit of the funds during this time. Def.'s Reply at 16, Adv. Pro. No. 19-01115-nhl, ECF No. 16. The Plaintiff disagrees. First, the Plaintiff argues that the Defendant waived its right to bring this argument, because ratification is an affirmative defense and was not pled by the Defendant in its answer. Regarding the merits of this argument, the Plaintiff contends that it immediately repudiated the loan, and did not make the January 1, 2019 payment. Compl. ¶

21. The Plaintiff also alleges that it offered to return all of the funds with contract interest, but the offer was refused. *Id*. ¶ 23.

As an initial matter, the Court will allow the Defendant to plead this affirmative defense given that the case is in the initial stages of litigation. Although Fed. Rule Civ. P. 8(c) requires parties to raise affirmative defenses in their pleadings, courts may entertain unpleaded affirmative defenses up to the summary judgment stage "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *See Saks v. Franklin Covey Co*., 316 F.3d 337, 350 (2d Cir. 2003). In determining whether a party will be unduly prejudiced, the Second Circuit "consider[s] whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr*., 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993)).

At this stage of the Adversary Proceeding, there has not been substantial discovery. There is no evidence that the Plaintiff will be required to expend significant additional resources in defending itself. In fact, the Plaintiff included facts about its alleged immediate repudiation in its Complaint, revealing that the Plaintiff was already considering this theory at the time of the filing. *See* Compl. ¶¶ 21-23. Additionally, there is no evidence that this defense was raised in bad faith, or with dilatory motive, futility or delay. *See Saks*, 316 F.3d at 350.

With regards to the substance of the allegation, the Court finds that the Plaintiff has not stated a claim that it immediately repudiated the contract. Importantly, the Plaintiff waited ***eight months*** after the alleged economic duress to take action in state court, and this delay is sufficient

to support a finding of ratification. *VKK Corp.*, 244 F.3d at 123 ("Delays as short as six months have been held to constitute forfeiture of the claim."). The Plaintiff has not alleged facts that there was continuous duress such that the Court could condone the delay. *See Austin*, 29 N.Y.2d at 133 (fourteen month delay in bringing action and acceding to Austin's demand did not waive economic duress claim where Loral feared that "another stoppage of deliveries which would again put it in an untenable situation"); *see also Sosnoff*, 165 A.D.2d at 492 (highlighting that there may have been continuous duress such that immediate repudiation was not required). To the contrary, and as highlighted by the court in *Jonassen*, "[i]f an urgent need for funds truly coerced plaintiffs to agree to the terms of the [contract], then the duress would have ended as soon as the [contract] was signed and the payments were made." 1990 WL 180150, at *4. The record reflects that the Plaintiff only took action in State Court *after* the Defendant had taken steps to enforce its security interest and scheduled a sale of the Membership Interests. Thus, while the Plaintiff may have acted promptly to attempt to halt the sale of the collateral, this is a distinct issue from its claim that the underlying Loan Documents were consummated under economic duress. As detailed above, that claim should have been asserted promptly after execution of the Loan Documents in order to support a finding that the Plaintiff did not ratify the contract with the Defendant.

Moreover, even assuming that the Plaintiff attempted to return the funds as alleged, it is clear from the facts that the Plaintiff affirmatively acknowledged the Loan Documents and accepted the benefits thereunder. That is, for a period of eight months, the Plaintiff retained the money, and continued to own the Property. *See VKK Corp.*, 244 F.3d at 123. For these actions to not constitute ratification, the Court would have to find that there was continuous duress, but as stated above, this is not the case. *Davis & Associates,* 168 F.Supp.2d at 118 ("[F]or a [contract] to be voided where the party claiming duress has accepted and retains a benefit received in

consideration for its execution, the disaffirming party must still be under the same continuing duress.") (internal citations omitted).

Accordingly, even if the Plaintiff stated a claim of economic duress, which it did not, the cause of action would nonetheless fail because it is not plausible that the Plaintiff immediately repudiated the Loan Documents.

### III. Equitable Subordination

Section 510(c) of the Bankruptcy Code provides that a court may "subordinate for purposes of distribution *all or part* of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest . . ." (emphasis added). In order to prevail on a claim of equitable subordination, "(i) the claimant must have engaged in some type of inequitable conduct[,] (ii) [t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant[, and] (iii) [e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 852 (E.D.N.Y. 1995) (citing *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir.1977)). "[T]he type of inequitable conduct that justifies subordination of a non-insider's claim is 'breach of an existing, legally recognized duty arising under contract, tort or other area of law.'" *In re LightSquared*, 511 B.R. 253, 348 (quoting *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re Nassau Assocs.)*, 169 B.R. 832, 840 (Bankr. S.D.N.Y. 1994)).

While the second prong of the *Mobile Steel* test is stated in the disjunctive, courts in the Second Circuit have read this phrase in the conjunctive, finding that "unfair advantage to the claimant, *in the absence of injury to creditors*, is not sufficient." *In re LightSquared*, 511 B.R. at 347 at n.152 (internal citations omitted); *see also In re Mr. R's Prepared Foods, Inc.* 251 B.R. 24,

16

Case 1-19-01115-nhl    Doc 25    Filed 08/17/20    Entered 08/17/20 15:05:36

29 (Bankr. D. Conn. 2000) ("In [the Second] Circuit, the second requirement for equitable subordination involves a conjunctive test, requiring a showing of both unfair advantage to one creditor and harm to the debtor or its other creditors." (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 611 (2d Cir.1983) (grammatical changes in original)). This is because equitable subordination is remedial in nature and "a claim or claims should be subordinated only to the extent necessary to offset the harm which the ***bankrupt and its creditors*** suffered on account of the inequitable conduct." *In re Mobile Steel Co.*, 563 F.2d at 701 (emphasis added).

Further, the plain language of the statute distinguishes "claims" and "interests," thus representing a distinction between creditors and equity holders. *See Adelphia Recovery Tr. v. Bank of Am. N.A.*, 390 B.R. 80, 98 (S.D.N.Y. 2008). As such, "a claim may be subordinated to another claim and an interest may be subordinated to another interest under court-developed principles of equitable subordination." *Id*. at 98-99.

The Defendant asserts that this claim must fail as a matter of law because the Plaintiff has not alleged that any creditors were harmed by the alleged actions. Def's Reply at 18-19, Adv. Pro. No. 19-01115-nhl, ECF No. 16. The Court agrees. While it may be plausible that the Defendant engaged in inequitable conduct, namely, a breach of the loan commitment, the Plaintiff has made no allegations that any creditors were harmed by this conduct. *See In re LightSquared*, 511 B.R. at 348. As such, the Plaintiff has not stated a claim with respect to this cause of action.

However, because inequitable conduct may be plausible, the Court will dismiss this claim ***without prejudice***, and will allow the Plaintiff to amend its claim to include facts, if available, that creditors were injured by the alleged inequitable conduct.

17

## **Conclusion**

For the reasons discussed, the Motion for Judgment is GRANTED with respect to the economic duress claim, and that claim is dismissed. Further, the Plaintiff has failed to state a claim with respect to the equitable subordination claim but that cause of action is dismissed without prejudice and the Plaintiff may amend its Complaint to include facts, if available, that creditors were injured by the alleged inequitable conduct.

**Dated: August 17, 2020**
**Brooklyn, New York**

_____
**Nancy Hershey Lord**
**United States Bankruptcy Judge**